**In re Richard J. PAUQUETTE, Joan Pauquette, Debtors.**

**Bankruptcy No. 83–171.**

United States Bankruptcy Court, D. Vermont.

March 9, 1984.

Jerome I. Meyers, Springfield, Vt., Trustee, pro se.

James B. Anderson, Barre, Vt., for debtors.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

This matter came on for hearing on the Objection of the trustee to some of the claimed exemptions of the debtors, specifically the interest of Joan Pauquette, co-debtor, in the estate by the entirety in excess of the mortgage indebtedness, her homestead exemption of $30,000.00 allowed under state law, i.e., 27 V.S.A. § 101, and $5,000.00 of the residence exemption of $7,500.00 allowed to her husband under § 522(d)(1) of the Bankruptcy Code; the Prudential IRA account of $2,014.82 claimed exempt by Richard J. Pauquette, co-debtor, pursuant to § 522(d)(10)(E) of the Code; the exemption of a 1978 Monte Carlo claimed by debtor, Joan Pauquette, under state law by virtue of her interest therein as an estate by the entirety and the claimed exemption of debtor, Richard J. Pauquette, in tools and office equipment pursuant to § 522(d)(6) of the Code.

At the hearing it appeared that Joan Pauquette was not entitled to an exemption of the 1978 Monte Carlo but her husband, Richard J. Pauquette, was entitled to claim it under § 522(d)(2) of the Code with its value established at less than $1,200.00. In view of this the trustee withdrew his objection as to the 1978 Monte Carlo insofar as it pertained to the claimed exemption of Richard J. Pauquette. He also withdrew his objection to the claimed exemptions for tools and office equipment as being valued at less than $750.00.

This leaves for determination by the Court whether the debtor, Joan Pauquette, is entitled to an exemption of her interest in the homestead property as a tenant by the entirety over and above the mortgage balance plus the homestead and residence exemptions hereinabove mentioned and whether debtor, Richard J. Pauquette, is entitled to an exemption of the Prudential IRA account with a value of $2,014.82 as of December 31, 1982.

## FACTS

Richard J. Pauquette and Joan Pauquette, husband and wife, filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on August 31, 1983, and they listed as part of their assets their homestead premises on about 1.7 acres of land situated on North Street, Wells, Vt., with a valuation of $50,000.00. This property was purchased by them from Richard S. Blake and Marian Blake and from Samuel A. Jones and Pauline M. Jones, and title was conveyed to the debtors, Richard J. Pauquette and Joan Pauquette, husband and wife, as tenants by the entirety by two separate deeds dated October 27, 1980 and September 13, 1965, respectively. On the date of the filing of their petition for relief the homestead property was still owned by them as an estate by the entirety.

On or about March 17, 1975, at the suggestion of an insurance agent that the debtor, Richard J. Pauquette, take out a retirement policy so that he could take care of expenses when he got old, this debtor purchased and had issued to him by the Prudential Insurance Company of America, a Retirement Income Endowment Policy No. 37 496 005 in the face amount of $5,623.00, with an endowed early period of 65 years less issue age and a deferred endownment period of 69 years less issue age. The main beneficiary is Joan H. Pauquette, wife.

This policy contains the following general provisions:

"OWNERSHIP AND CONTROL.—Subject to any endorsement hereon by Prudential, the Owner of this policy shall be the insured, and during the insured's lifetime the Owner shall be entitled, without

the consent and to the exclusion of any other person, to any benefit payable and any value obtainable under the policy and to the exercise of any rights and privileges conferred by the policy or allowed by Prudential."

The policy also contained a non-forfeiture provision that the policy may be surrendered for the net cash value. The limitation provisions required for IRA cases are attached to the policy and under "Endorsements" the following appears: "Non Transferable Provision, Special Provision I—Special Provision II."

The debtor purchased this policy so that the proceeds would furnish him with money for food, medicine, hospital benefits and general expenses when he got old.

The cash value of this policy as of December 31, 1982, was $2,014.82 and as of the date of the filing of the petition for relief on August 31, 1983 the cash value had increased.

The debtor has the right to cash in the policy at any time upon payment of any penalty prescribed for IRA accounts under the Internal Revenue Code.

The debtor has defaulted in the payment of the prescribed premium for the policy at least once and there is no assurance that he will be able to maintain the policy in full force in the future.

Since June, 1976, the debtor, Richard J. Pauquette, has been engaged as a builder doing business as a sole proprietorship. He was solely responsible for managing the business, did all of the hiring and firing, engaged in all negotiations relating to the business, filed U.S. Income Tax Returns for the years 1980, 1981, and 1982 jointly with his wife but he did attach to each of them a Schedule C which constituted a profit or loss statement from his business and this was in his own name. The IRS accepted these returns with Richard Pauquette as Sole Proprietorship. His wife was a homemaker and had no financial interest in the business conducted by Pauquette as builder but she did assist him, as a good housewife would, in making out checks for the payment of bills pertaining to the business and on certain occasions checks for the payment of personal expenses relating to the operation of their household.

All of the liabilities listed on the schedules, with the exception of the mortgage indebtedness on the homestead property, were incurred solely by Richard Pauquette and all of them related to the operation of his business. Outside of the mortgage indebtedness they had no joint debts. All checks drawn by Mrs. Pauquette were written at the direction of her husband and those for personal obligations were drawn by Mrs. Pauquette only after consulting with her husband who had complete control of the business. There was no agreement between them to share in the profits or losses of the business and Mrs. Pauquette never negotiated with customers, or suppliers, and she had nothing to do with the hiring and firing of employees. She had no voice in the operation of her husband's business.

## DISCUSSION

Richard J. Pauquette is claiming, under amended schedule B–4, $5,000.00 as part of his residence exemption of $7,500.00 allowed by Section 522(d) of the Bankruptcy Code. His wife is claiming a homestead exemption of $30,000.00 pursuant to State Statute, 27 V.S.A. § 101. In addition, she is claiming as exempt the equity in the homestead premises over and above the mortgage indebtedness residence exemption of her husband and her homestead exemption under state law. This equity she claims as exempt by virtue of the ownership of the property by her and her husband as an estate by the entirety. The court agrees with her position.

 A tenancy by the entirety in real property may be generally defined as an estate in land accruing to husband and wife wherein both are seized of the entirety so that neither can dispose of any part without the consent of the other, nor may either subject it to payment of his or her individual debts. In the event of the death

of one spouse, the whole estate passes to the survivor as his or her sole property. A tenancy by the entirety is entirely distinct from a joint tenancy, a tenancy in common, or community property. It is obvious, therefore, that in jurisdictions where such an estate was recognized with all its usual incidents, and where the facts were such as to indicate a tenancy by the entirety, a trustee in bankruptcy of either husband or wife under the Bankruptcy Act would not take title to real property covered by the tenancy. Under the Code, however, if an interest on the part of the debtor in a tenancy by the entirety is established under local law, such interest will become property of the estate under section 541(a)(1). *4 Collier 15 Ed. § 541.07 pages 541–35 and 541–36.*

█ Even though the debtor's interest in an estate by the entirety is includable as part of her estate she is entitled to have it declared exempt. See § 522(b)(2)(B) of the Code, reading as follows:

"Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—any interest in property in which the debtor had, immediately before the commencement of the case, an interest <u>as a tenant by the entirety</u> or joint tenant to the extent that such interest <u>as a tenant by the entirety</u> or joint tenant is exempt from process under applicable nonbankruptcy law." Underscoring supplied.

█ Vermont recognizes the estate by the entirety in its traditional form. "Tenants by the entirety have but one title and each owns the whole, and neither, without the concurrence of the other, has power to convey to any third person and thus to sever the tenancy." *Kennedy v. Rutter*, 110 Vt. 332, 340, 6 A.2d 17 (1939). The estate by the entirety is protected from the sole creditors of either spouse. *Pettengill v. United States*, 205 F.Supp. 10, 13 (D.Vt. 1962), *Rose v. Morrell*, 128 Vt. 110, 112, 259 A.2d 8. See also *In Re D'Avignon* (Bkrtcy.Court—C.Vt.1981) 34 B.R. 790, 794–95, Affirmed (District Court—Vt.1982) 34 B.R. 796, 798.

In the instant case, none of the debts were incurred by Joan Pauquette. It follows that her interest in the homestead premises as a tenant by the entirety may not be charged with the obligations of her husband and she is entitled to the claimed exemption under § 522(b)(2)(B) of the Code.

### AS TO THE PRUDENTIAL IRA ACCOUNT

Debtor, Richard J. Pauquette, contends that the Prudential IRA Policy No. 37 496 005 is an individual retirement annuity which complies with the provisions of Section 408 of the Internal Revenue Code and is, therefore, exempt under § 522(d)(10)(E)(iii) of the Bankruptcy Code.

As a preliminary matter, a plan, contract or account otherwise exempt under § 522(d)(10)(E) is excepted from the exemption if subsections 522(d)(10)(E)(i), (ii) and (iii) conjunctively apply to the contract. Subsection (ii) does not apply to the instant contract because it was not established by an insider that employed Mr. Pauquette at the time his rights under the contract arose. Therefore, the debtor's interest may be exempt if it meets the general criteria established by § 522(d)(10)(E); the interest is not made nonexempt by the operation of subsections (i), (ii) and (iii) for the reason that the three subsections do not conjunctively apply. *See, In re Miller*, 33 B.R. 459, 11 BCD 85, 87 (Bkrtcy.D.Minn. 1981).

█ The legislative history of section 522(d)(10)(E) speaks to "benefits akin to future earnings of the debtor." House Report No. 95–595, 95th Cong., 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6318. The intent is to ensure that such benefits are available for retirement purposes. The test which has developed to determine whether a contract provides benefits akin to future earnings is whether account funds may be used only for the purpose of providing retirement benefits to the contract holder or to his beneficiaries in the event of his death. The test is satisfied where account funds can be

diverted to no other purpose than the retirement income of the contract holder: where access to the account funds can be achieved only upon the contract holder's disability, death, or retirement; where future payments, distributions, or return of capital may not occur except as an incident of disability, death, termination of employment, or retirement. Alternatively, where account funds may be withdrawn at any time by the contract holder, even if any early withdrawal assessment is an incident of the early withdrawal, the courts have unanimously rejected a claim of exemption under § 522(d)(10)(E). *See, e.g., Clark v. O'Neill,* 711 F.2d 21 (3d Cir.1983); *In re Howerton,* 21 B.R. 621 (Bkrtcy.N.D.Tex. 1982); *In re Brown,* 2 BCD 1661 (Bkrtcy.S. D.Ohio 1976); *In re Mace,* 4 BCD 94 (Bkrtcy.D.Or.1978); *In re Talbert,* 15 B.R. 536 (Bkrtcy.W.D.La.1981); *In re Lowe,* 25 B.R. 86 (Bkrtcy.D.S.C.1982); *Matter of Berndt,* 34 B.R. 515, 9 CBC 2d 848 (Bkrtcy. N.D.Ind.1983).

■ The instant policy provides the holder, Mr. Pauquette, with the opportunity to withdraw account funds at any time with no restriction except as to the reservation of an early withdrawal assessment. As such, Mr. Pauquette may divert the account proceeds from retirement purposes; he may have access to funds in the account at his election. He may use any funds withdrawn for any purpose; there is no tie-in between access to funds and the incidence of retirement, disability, death, or termination of employment. There is no guarantee that account funds will be used for the exclusive purpose of providing benefits akin to future earnings for Mr. Pauquette or his beneficiaries. Under these circumstances, the court holds that the policy interest—the debtor's I.R.A.—is not exempt under Code section 522(d)(10)(E).

### ORDER

Upon the foregoing,

IT IS ORDERED:

1. The interest of the Debtor, Joan Pauquette, in the homestead premises as a tenant by the entirety is ALLOWED.

2. The exemption claimed by the Debtor, Richard J. Pauquette, in the proceeds of the Prudential IRA policy is DENIED.