**In re Lawrene Marie RECTOR, Debtor.**

**Bankruptcy No. HT 91–82229.**

United States Bankruptcy Court,
W.D. Michigan.

Dec. 23, 1991.

---

Paul I. Bare, Traverse City, Mich., for the debtor.

A. Brooks Darling, Traverse City, Mich., for Chapter 7 Trustee, James Boyd.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before me to decide whether the Debtor can exempt, under § 522(d)(10)(E) of the Bankruptcy Code, $16,159.56 held in a state established deferred compensation program. On April 22, 1991, the Debtor filed a voluntary Chapter 7 Bankruptcy Petition. According to her Statement of Affairs, the Debtor was laid off from her job as a child care worker with the State of Michigan at the Arnell Engstrom Children's Center. The State of Michigan closed the Center prior to her filing for Bankruptcy.

As a state employee, the Debtor was eligible to participate in the Michigan Department of Civil Service Deferred Compensation Program. M.S.A. § 3.256(1) [M.C.L.A. § 38.1151] authorizes the Department of Civil Service to establish a deferred compensation savings program for state employees. Currently, two de-

ferred compensation plans are available. Deferred Compensation Plan I is established under § 457 of the Internal Revenue Code. 26 U.S.C. § 457 is an accounting provision of the tax code, providing that a participant's gross income shall not include compensation set aside under an eligible plan created by a state or local government until such compensation is actually paid or otherwise made available to the participant. Deferred Compensation Plan II is established under § 401(k) of the Internal Revenue Code. In this case, the Debtor participated in Deferred Compensation Plan I.

The literature describing the deferred compensation program for state employees is divided into three sections. In the introductory portion, deferred compensation, as a savings method, is generally described. Then, each plan under the two different tax code sections is explained. In the first section of the literature, deferred compensation is defined as "a method by which you can systematically 'set aside' a portion of your income into a savings program before it is taxed and thus reduce the amount of your current income taxes." The first section of the program literature goes on to specify that income set aside under either deferred compensation plan is available to the participant only upon the occurrence of four events: retirement; disability; separation (permanent—30 days or more); or death.

A more detailed discussion of withdrawal rights is contained in the two, more specific, sections of the booklet distributed to state employees. Money invested in Deferred Compensation Plan I, the alternative chosen by the Debtor, is released only upon the occurrence of one of the four events listed above or upon the showing of extreme hardship. In describing hardship withdrawal from the deferred compensation plan under § 457 of the tax code, the program literature states:

[t]he provision for hardship withdrawal ... is utilized only in very severe emergencies of a catastrophic nature, the result of an event or circumstance *beyond the control of the member* where a member has suffered an identifiable fi-

nancial loss (not reimbursable by insurance).

The literature goes on to make clear that: [i]tems *NOT* considered hardship beyond control of the member would be the need for school tuition or to purchase a home, bill consolidation, delinquent loan, back taxes, normal auto or home repairs, automobile purchase, etc.

The alternative, § 401(k) plan, available to state employees is less restrictive in the types of withdrawals available. Some of the types of hardship withdrawals excluded from Deferred Compensation Plan I, such as school tuition and payment to prevent foreclosure of the employees principal residence, are available if the participant elected to defer income into a 401(k) plan.

In her First Amended Schedule B-4, filed on July 3, 1991, the Debtor claims an exemption under § 522(d)(10)(E) of the Code for the amount of money in her deferred compensation plan. Documents submitted by the Trustee show that the Debtor has $16,159.56 in Deferred Compensation Plan I. Having been permanently separated from service, the Debtor has obtained the withdrawal rights that accrue upon termination and now possesses the right to demand full payment of the amount in the plan. Since the Debtor now has the right to full payment, the dispute between the Debtor and the Trustee over the exemption provided by § 522(d)(10)(E) of the Bankruptcy Code concerns entire $16,159.56 held in the plan. Further, $16,159.56 is included in the Debtor's bankruptcy estate. The Debtor agrees with the Trustee and consents to the conclusion that all funds in the Debtor's deferred compensation plan are property of the estate. Therefore, provisions of the Code relating to property of the estate, such as § 541(c)(2), do not need to be discussed. I am only concerned with the issue of whether the funds are exempt.

§ 522(d)(10)(E) provides an exemption for:

a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Under § 522(d)(10)(E), two conditions must be met before the Debtor is entitled to exempt funds held under her deferred compensation plan. First, Michigan Deferred Compensation Plan I must be a stock bonus, pension, profitsharing, annuity, or similar plan or contract with payment to the Debtor for the enumerated reasons. Next, any payment under the plan to which the Debtor is entitled, here, $16,159.56, must be reasonably necessary for the support of the Debtor and any dependents. *See, In Re Pettit,* 61 B.R. 341, 347 (Bankr. W.D.Wash.1986).

In his brief, the Trustee argues that the deferred compensation program established for Michigan employees is a savings plan that has, as its primary purpose, the reduction of income tax liability. According to the Trustee, Deferred Compensation Plan I is a tax shelter designed by the state to provide employees with a tax-exempt investment vehicle. The Trustee argues that the Debtor's plan fails to qualify under § 522(d)(10)(E) as a pension, profitsharing or similar plan or contract on account of illness, disability, death, age or length of service. To support this claim, the Trustee cites the literature given to employees which describes the deferred compensation plan as a mechanism for tax deferral and as a means to accumulate savings. The Trustee maintains that the Michigan deferred compensation program fails to restrict payment in accordance with the purpose of § 522(d)(10)(E). The Trustee concludes that since the Debtor has deferred income into an investment vehicle outside the provisions of § 522(d)(10)(E), there is no need to keep funds held within the plan away from the reach of creditors.

The Debtor responds by arguing that the state plan permits only restricted withdrawal, limited to retirement, disability, death or separation, and is the type of plan envisioned under the federal exemption of the Bankruptcy Code. The Debtor further submits that the funds invested in the Michigan plan are essential in assuring a fresh start.

The legislative history to § 522(d)(10)(E) states that "[p]aragraph (10) exempts certain benefits that are akin to future earnings of the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess., at 361–62 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318. "The intent is to insure that such benefits are available for retirement purposes or in the event of disability or termination of employment." *In Re Sheridan*, 38 B.R. 52, 56 (Bankr.D.Vt.1983).

Another Vermont Bankruptcy case explains:

> [t]he test which has developed to determine whether a contract provides benefits akin to future earnings is whether account funds may be used only for the purpose of providing retirement benefits to the contract holder or to his beneficiaries in the event of his death. The test is satisfied where account funds can be diverted to no other purpose than the retirement income of the contract holder; where access to the account funds can be achieved only upon the contract holder's disability, death or retirement.

*In Re Pauquette*, 38 B.R. 170, 173–74 (Bankr.D.Vt.1984).

A brief look at the Vermont cases will illustrate the analysis that needs to occur. In the first case I cited, *In Re Sheridan*, the debtor was employed by the State of Vermont. The debtor sought to exempt his participation interest of $18,230 in the Vermont Employees Retirement System. Under the system's retirement plan, no benefits were payable until the debtor's employment terminated. The Court first held that future benefits under the plan were not property of the estate. The Vermont Bankruptcy Court went on to hold that, even if the benefits were part of the estate, they would be exempt under § 522(d)(10)(E). In deciding that the funds held by the system were exempt, the Court stressed the fact that payment would be made to the debtor only on account of disability, death or termination of employment. Since payment was based on a limited set of circumstances where the debtor would require the receipt of delayed earning, the Court rejected the Trustee's argu-

ment that the Vermont plan was an investment vehicle rather than a pension or retirement plan. The Court found that payment based upon termination did not remove the Vermont plan from the federal exemption. Payment upon termination was a right of the debtor akin to future earning or payment upon retirement. The Court concluded that "the debtor's right to payment under the plan falls squarely within the protection of section 522(d)(10)(E)." *In Re Sheridan*, 38 B.R. at 56.

In, *In Re Pauquette*, the dispute concerned an IRA established by the debtor. Here, the Court found that no exemption existed under § 522(d)(10)(E). In this instance, the debtor had open access to the funds held in the IRA. The only limitation on the debtor's ability to use the funds was an early withdrawal assessment. The Court noted that money held in the IRA could be used for any purpose. With open access, the IRA was not akin to future earnings for the purpose of retirement or disability, but, in this case, was more like any investment vehicle that the debtor may utilize to increase earnings.

As did the court in Vermont, I need to determine whether payment pursuant to a deferred compensation program is akin to the type of future earning envisioned by the federal exemption.

> The historical purpose of exemptions, whether in bankruptcy circumstances or otherwise, is to protect a debtor from creditors by permitting him to retain the basic necessities of life so that after his creditors have levied on or receive all nonexempt property, the debtor will not be left destitute and a public charge.

*Warren v. Taff (In Re Taff)*, 10 B.R. 101 (Bankr.Conn.1981).

§ 522(d)(10)(E) protects payment that will be necessary to a debtor in the future. For example, a plan participant relies on and needs payment upon retirement. The Code disfavors allowing creditors to reach such essential funds. Payment should be preserved for a time when need is acute. Whether Deferred Compensation Plan I satisfies the requirements of

§ 522(d)(10)(E) will depend on whether the plan exists for the purpose of providing future earnings to the Debtor in a time of need or whether the state employee plan is merely a way for the Debtor to receive a tax break through deferring income.

One of the reasons given by the Trustee for his objection to the Debtor's claimed exemption, is that the Debtor's plan is for investment and not for retirement. But, the terms of the deferred compensation plan go against such a conclusion. Payment is severely restricted under the Debtor's plan. Money cannot be withdrawn to start a business or for college tuition. There is no daily access to payment. The income deferred into the state plan is preserved for a time when the Debtor is in need. A pension or profitsharing plan reserves income for the participant, making payment at a future time upon the occurrence of a limited set of events. Retirement, disability, separation, death and extreme hardship all qualify as specific events when a participant will be in need of the funds reserved. By restricting withdrawal to only a few instances when the need for funds is strong, Michigan limits the utility of Deferred Compensation Plan I as an investment or purely a tax savings device and makes it more like the type of plans listed in § 522(d)(10)(E).

The Trustee has relied a good bit on the fact that the literature describing the deferred compensation plans states that money invested can be used to start a business, have a family or go to college. This reliance is misplaced. Payment for these purposes can only be obtained under the § 401(k) plan. Under Deferred Compensation Plan I, payment is limited to retirement, disability, death, separation or extreme hardship. Access to funds is more restricted under the Debtor's plan.

§ 522(d)(10)(E) requires that the debtor receive deferred income only on account of illness, disability, death, age, or length of service. The first three reasons for payment listed in Deferred Compensation Plan I, retirement, disability and death, mimic the reasons listed in § 522(d)(10)(E). Deferred Compensation Plan I conditions payment upon death and disability which are specifically listed in § 522(d)(10)(E). The Michigan plan also calls for payment upon retirement. Conditioning payment upon retirement corresponds with the mention of age as a triggering event in § 522(d)(10)(E).

Deferred Compensation Plan I is a defined contribution plan. The participant's benefit is determined by the amount he or she contributes. The participant is entitled to the sum invested in the plan upon the occurrence of the enumerated events. The longer the participant, and here, the Debtor, contributes to the plan, the greater her benefits become. In this sense, length of service, again mentioned in § 522(d)(10)(E) as an event upon which payment should be made, is a factor under the Michigan program.

Separation and the presence of uncontrolled hardship are the only reasons for payment that differ from the list in § 522(d)(10)(E). Although separation from service is not specifically mentioned in § 522(d)(10)(E), it goes along with retirement and disability as the type of circumstance when the debtor possesses an acute need for the funds held within the plan. Separation from service is the same type of watershed event that produces a need for the payment of accumulated earnings. Like retirement, the date of separation can be chosen by the participant, but entails a drastic change in circumstances where the need for accumulated and deferred income is present. Also, permanent separation and retirement both mark the break between when present wages are provided by the employer and the payment future, accumulated, earnings begin. Deferred Compensation Plan I allows for payment only after permanent separation of 30 days or more. There is no quick and ready access to the funds invested by the state employee. Earnings which had been deferred are paid out to the participant when need is great and when employment has terminated. Becoming entitled to payment after the occurrence of an event as dire as separation from employment, is not the same as having control over a savings account or IRA, where only a withdrawal penalty is

due. With the Michigan deferred compensation plan limiting payment to retirement, disability, death and separation, open access to the funds held is denied to a participant. I find no reason to deny the Debtor's deferred compensation plan exempt status based on the occurrence of payment on separation and I find that payment based upon permanent separation is akin to future earnings.

The provision made for hardship withdrawal in the Michigan plan is also in accordance with § 522(d)(10)(E). Payment can be obtained only upon a showing of extreme need beyond the participant's control. Hardship withdrawal is easily likened to disability as an unforeseen event necessitating payment. The conditions for payment provided in Deferred Compensation Plan I meet the Code's requirement for an exemption to be provided to the Debtor for payment and provide certainty to the conclusion that Deferred Compensation Plan I cannot be viewed as an investment or savings plan outside of the exemption provided by the Code.

I do not think it matters that the Debtor is now entitled to full payment for the money in her plan. The fact that the Debtor may now be entitled to full payment does not affect whether the money held in the plan is similar to a retirement or pension plan providing the participant with future earning. The degree of control over the funds is relevant to this determination, but here, the plan clearly establishes that the degree of control is limited to the occurrence of four events. The amount of payment now available to the Debtor should be considered in the latter half of the analysis under § 522(d)(10)(E), when I am called upon to decide if the payment is reasonably necessary for the Debtor's support. *See, In Re Flygstad,* 56 B.R. 884, 891 (Bankr.N.D.Iowa 1986).

What makes this case distinguishable from the *Sheridan* case, and perhaps tough to decide, is the fact that the debtor is participating in a defined contribution plan. In *Sheridan,* the debtor, before filing, had rolled over funds from a defined contribution plan into a non-contributory retirement plan. But here, like the IRA in *Pauquette,* any payment made from the Michigan deferred compensation program would be a return of the Debtor's contribution that she made via wage deferral. This fact makes the Debtor's right to payment appear to be more like the return on an investment and less like the payment of future earnings under a retirement plan. Now, the Trustee has not focused on this distinguishing factor in his argument, but I think it deserves attention. At issue, is whether the fact that the Debtor provided the funds held in the deferred compensation plan renders the federal exemption inapplicable to payment from the plan.

The Michigan deferred compensation plan calls for each participant to elect a percentage or specific dollar amount to deduct from his or her gross wages and contribute to the plan. The participant never actually receives any of the funds contributed until the triggering event. This type of benefit plan is a defined contribution plan. The employee, in effect, funds her savings plan and then a return is guaranteed to the participant based on the amount contributed. Due to the cost of employer funded plans, or of defined benefit plans, a number of retirement programs now operate as defined contribution plans. Both are legitimate retirement plans. Payment is still not available to a participant until retirement, disability or hardship. § 522(d)(10)(E) calls for plans to be akin to future earning. This is true whether the debtor contributes by salary deferral, or whether a defined payment is guaranteed to the debtor and funded by the employer.

Resolving the question of whether a defined contribution plan is encompassed under § 522(d)(10)(E) boils down to determining whether the Michigan plan was established to provide payment to the participants in the event of occurrences sanctioned under § 522(d)(10)(E) or whether the plan is, like the Trustee argues, merely a savings device, or income tax shelter. Here, as I have said before, the fact that the plan calls for payment only upon death, disability, retirement, separation and uncontrolled hardship, leads me to conclude that payment under the Michigan deferred

compensation plan should be considered exempt to the extent reasonably necessary for support of the Debtor and her dependents.

 Now my concern turns to a factual analysis of the Debtor's circumstances to determine if payment is necessary for support. Whether payment is reasonably necessary for the Debtor's support turns on the unique facts of each case. *In Re Taff*, deals specifically with this issue. In that case, the Court stated that:

the reasonably necessary standard requires that the court take into account other income and exempt property of the debtor, present and anticipated, ... and that the appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed but taking into account the special needs that a retired and elderly debtor may claim.

*In Re Taff*, 10 B.R. at 107.

 The following factors now need to be determined and from them I can make the determination whether the full $16,159.56 is necessary for the Debtor's support:

(1) Debtor's present and anticipated living expenses;

(2) Debtor's present and anticipated income from all sources;

(3) Age of the debtor and dependents;

(4) Health of the debtor and dependents;

(5) Debtor's ability to work and earn a living;

(6) Debtor's job skills, training and education;

(7) Debtor's other assets, including exempt assets;

(8) Liquidity of other assets;

(9) Debtor's ability to save for retirement;

(10) Special needs of the debtor and dependents;

(11) Debtor's financial obligations, e.g., alimony or support payments.

*In Re Flygstad* 56 B.R. at 890.

Since no testimony has been presented on these factors, a factual hearing will be necessary to make a final conclusion on the extent of the claimed exemption and the Trustee's objection to it. A hearing will need to be set to determine whether the amount invested in Michigan Deferred Compensation Plan I is reasonably necessary for the support of the Debtor.