**In re V. Raymond DESTREMPS, Jr., Debtor.**

**Bankruptcy No. 95–14020–WCH.**

United States Bankruptcy Court, D. Massachusetts, Eastern Division.

Feb. 26, 1996.

Donald R. Lassman, Chapter 7 Trustee, Kassler & Feuer, Boston, MA.

---

Joseph J. Czerwonka, Fall River, MA, for Debtor.

Thomas O. Bean, Asst. Attorney General, Government Bureau, Boston, MA, for Comm. of MA.

## DECISION REGARDING TRUSTEE'S OBJECTION TO EXEMPTION

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. Background

V. Raymond Destremps, Jr. (the "Debtor") is an employee of the Massachusetts Department of Revenue. He participates in the Commonwealth of Massachusetts Employees Deferred Compensation Plan (the "Plan"). On the date the Debtor filed his Chapter 7 petition, his interest in the Plan had a value of $18,000.

The Debtor claimed an exemption in the Plan pursuant to 11 U.S.C. § 522(d)(5), (7), (8), and (10). The Chapter 7 trustee, Donald Lassman (the "Trustee"), filed an objection to the claimed exemption.[1] I conducted a hearing and took the matter under advisement. In addition to the post-hearing briefs that the Debtor and the Trustee filed, the Attorney General for the Commonwealth of Massachusetts (the "Commonwealth") filed a memorandum, *amicus curiae*, with respect to the Trustee's objection.

The Plan was created as a result of 26 U.S.C. § 457 which is entitled "Deferred compensation plans of state and local governments and tax-exempt organizations." Section 457 "authorizes a state to enact a plan by which state employees may defer a portion of their income and thereby not have to pay federal income tax on the portion so deferred and any interest accrued thereon until the compensation is paid or otherwise made available to a participant." *In re Osburn*, 56 B.R. 867, 870 (Bankr.S.D.Ohio 1986). Amounts deferred by such a plan cannot be made available until the participant reaches age 70½, has separated from employment or is faced with an unforeseeable emergency. 26 U.S.C.A. § 457(d)(1)(A).

In response to § 457, the Massachusetts legislature enacted Mass.Gen.L. ch. 29, §§ 38B, 64, 64B and 64D; ch. 32, § 3A; ch. 35, § 57; ch. 44, § 67; and ch. 161A, § 19H. These statutes contain the enabling provisions for the Plan.

The Plan provides that a participant can annually defer an amount of compensation not to exceed the lesser of $7,500 or 33⅓% of the participant's compensation. Plan § 2.04. The Plan further provides that "[a]ll assets of the Plan, including all deferred amounts ... shall remain ... solely the property and rights of the employer ... subject only to the claims of creditors of the employer." Plan § 7.09. A participant is entitled to the benefits of the Plan upon separation from employment, death, or an unforeseeable emergency. Plan § 8.01. Unforeseeable emergency is defined in the Plan as a "severe financial hardship to the participant resulting from a sudden and unexpected illness or accident of a dependent ... of the participant, loss of the participant's property due to casualty, or other similar or extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant." Plan 1.01(bb).

Regulations have been promulgated regarding deferred compensation plans. See 960 CMR 3.00. The regulations provide that "[h]ardship withdrawal means that withdrawal will be permitted for unforseen emergencies including, but not limited to, personal bankruptcy, unreimbursed medical expenses, disability, major property loss and unbudgetable catastrophes." 960 CMR 3.02.

On May 24, 1994, Debtor requested an emergency withdrawal of his funds from the Plan. The Debtor stated that, because of the termination of a relationship of twenty two years, he was left with monthly bills that exceeded his monthly income. He stated that his choices were to file for the emergen-

---

1. Apparently, the Plan has a life insurance component and a deferred compensation component. At the hearing on the Trustee's objection, the Trustee stated that he did not object to the claimed exemption in the life insurance component. The Trustee's only objection is to the de- ferred compensation aspect of the Plan. Likewise, it does not appear that the Trustee objects to the Debtor's claimed exemption for the portion of the deferred compensation aspect of the Plan that is covered by 11 U.S.C. § 522(d)(5).

cy withdrawal or face bankruptcy which he believed would cost him his job. He also stated that the circumstances surrounding the request were unforseen. On June 15, 1994, the administrator of the Plan denied the request on the grounds that normal budgetable expenses, such as bills, do not qualify for an unforseen financial hardship.

## II. *Arguments*

The Trustee first argues that the Plan is property of the estate pursuant to 11 U.S.C. § 541. As grounds the Trustee states that the assets of the Plan are not held in trust but are solely the property of the state and a participant's only right to those assets is as a general creditor. *See* Mass.Gen.L. ch. 29 § 64 (deferred compensation is addition to and not part of retirement program or pension system); Plan at § 7.09 (plan assets property of Commonwealth). Therefore, 11 U.S.C. § 541(c)(2), which excludes from the estate beneficial interests in certain trusts enforceable under nonbankruptcy law, is inapplicable.

The Trustee also argues that 11 U.S.C. § 522(d)(10)(E) is inapplicable for two reasons.[2] First, he contends that the subsection applies only to payments and cannot extend to the lump sum withdrawal which he is seeking.

Second, the Trustee asserts that the subsection does not apply because the Plan provides for payments for reasons not contemplated by the statute.[3] That is, while the statute exempts payments from plans on account of illness, disability, death, age or length of service, the Plan will also permit payment for an unforeseeable emergency, an event not described in the statute. Because the monies that the Trustee seeks would be for the latter reason, the Trustee contends the monies that he would receive would not be exempted by the statute. For authority, the Trustee cites to *In re Pauquette,* 38 B.R. 170 (Bankr.D.Vt.1984); *In re Evenson,* 165 B.R. 27 (Bankr.E.D.Mich.1994); and *In re Sheridan* 38 B.R. 52 (Bankr.D.Vt.1983). Because the Debtor is not entitled to the exemption, the Trustee believes the Debtor's interest in the Plan should be turned over to him because the Debtor's bankruptcy triggered grounds for release of the funds.

The Debtor argues that 11 U.S.C. § 522(d)(10)(E) allows him to exempt the Plan. In support, the Debtor relies exclusively on *In re Rector,* 134 B.R. 611 (Bankr. W.D.Mich.1991).[4]

In its brief, the Commonwealth first contends that I should decline to decide the issue until I decide whether the Debtor's interest in the Plan is reasonably necessary for his support. Second, the Commonwealth asserts that the Trustee failed to establish that the Plan is not a "similar plan" as contemplated by the statute. Lastly, the Commonwealth requests that if I uphold the Trustee's objection, I should only order that the Debtor can seek to remove the funds from the Plan and not that the Commonwealth must turn over the funds to the Trustee.

## III. *Analysis*

The burden of establishing that the Debtor is not entitled to his claimed exemption falls on the Trustee. Fed.R.Bankr.P. 4003(c). Because the issue of whether the funds in the Plan are necessary for the Debtor's support are not yet before me,[5] I decline the Commonwealth's offer to decide that issue now. Because the parties do not contest the issues, I conclude that the Plan is property of the estate and a "similar plan".

■ With respect to the Trustee's argument that the exemption should be denied because the Trustee intends to seek the lump

---

**2.** 11 U.S.C. § 522(d)(10)(E) provides for an exemption in the "debtor's right to receive—a payment under a stock bonus, pension, profit sharing, annuity, or other similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor ..."

**3.** The Trustee does not argue that the Plan is not a "similar plan".

**4.** The debtor does not argue that the Plan is not property of the estate.

**5.** The Trustee in his brief states that the issue of support is not addressed in his brief and can be decided only after an evidentiary proceeding.

88

sum and not the Debtor's right to any present payment, the Trustee offers no supporting authority. There is ample authority in this circuit for the proposition that § 522(d)(10)(E) does not require a present right to payment. *See e.g. In re Marsella,* 188 B.R. 731 (Bankr.D.R.I.1995) and *In re Yee,* 147 B.R. 624 (Bankr.D.Mass.1992). Because the Trustee has not met his burden, I cannot rule in his favor on this issue.

The issue in this case is narrowed to whether the Debtor is entitled to his claimed exemption even though the Plan allows for payments for reasons not specifically enumerated in 11 U.S.C. § 522(d)(10)(E).

The Trustee cites to three cases in support of his argument and to a fourth case which he argues is not on point. The first, *In re Evenson,* 165 B.R. 27 (Bankr.E.D.Mich.1994), is inapplicable because it addresses an individual retirement account which is not comparable to the Plan. The second, *In re Kingsley,* 181 B.R. 225 (Bankr.W.D.Penn. 1995), is also inapplicable because it does not address the issue before me. The third case, *In re Pauquette,* 38 B.R. 170 (Bankr.D.Vt. 1984), is addressed below.

The Trustee argues that *In re Rector, supra* is not on point because the plan in *Rector* is not similar to the Plan. He contends that the provisions in the Plan for unforeseeable emergency are construed more liberally than those described in the plan in *Rector.* For example, the Trustee states that the Plan allows for withdrawals for personal bankruptcy, foreclosure or tax delinquency.[6] The plan in *Rector,* however, allowed a participant to withdraw funds only for an emergency "of a catastrophic nature, the result of an event or circumstance beyond the control of the member ... [i]tems NOT considered hardship beyond control of the member would be the need for school tuition or to purchase a home, bill consolidation, delinquent loan, back taxes, normal auto or home repairs, automobile purchase, etc." *Rector,* 134 B.R. at 612.

The Commonwealth disagrees with the Trustee's interpretation of the Plan, applicable regulations and the Form. The Com-

monwealth states that funds would only disbursed to prevent a foreclosure or to pay delinquent taxes in the event that these circumstances were a result of an unforeseeable emergency. Further, the Commonwealth, through an affidavit of the administrator of the Plan, stated that a disbursement from the Plan for personal bankruptcy would only be considered if the participant's bankruptcy filing were a result of an illness, accident or event beyond his or her control. The administrator stated that she so interpreted the regulation in order to comply with § 457 of the Internal Revenue Code.

■ I believe that the administrator's interpretation of the Plan, regulations and Form is correct. I think that were withdrawals permitted solely to prevent foreclosure, pay delinquent taxes or as a result of a personal bankruptcy, the administrator would be ignoring the words "unforseeable" or "unforseen" in the Plan, regulation and/or Form. Further, I believe I am obligated to give deference to the administrator's interpretation of the regulation. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844–845, 104 S.Ct. 2778, 2782–2783, 81 L.Ed.2d 694 (1984). Therefore, although that I cannot conclude that the Plan and the plan in *Rector* are identical, because I cannot compare them provision for provision, I conclude that they are substantially similar. Having concluded that, I also conclude that *In re Rector* is directly on point with this case.

The judge in Rector was faced with, *inter alia,* the same issue presented in this case. To answer the question, he first looked to the legislative history of 11 U.S.C. § 522(d)(10)(E). That history provides that the subsection was designed to exempt "benefits that are akin to future earnings of the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess., at 361–362 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6318.

Judge Howard then looked to two Vermont cases. *In re Sheridan,* 38 B.R. 52 (Bankr. D.Vt.1983) and *In re Pauquette,* 38 B.R. 170 (Bankr.D.Vt.1984). In the former case, the

6. In support, the Trustee cites to the Emergency Withdrawal Request Form which a Plan partici-

pant must fill out in order to access any funds (the "Form").

court held that because the plan permitted withdrawals under limited circumstances, it was not an investment vehicle and was covered by § 522(d)(10). In the latter case, the court stated that "whether a contract provides benefits akin to future earnings is whether account funds may be used only for the purpose of providing retirement benefits to the contract holder or to his beneficiaries in the event of his death." 38 B.R. at 173. The *Pauquette* court held that an Individual Retirement Account was not exempted under the statute because the debtor had open access to the funds with the exception of an early withdrawal assessment.

Judge Howard then stated that he needed to determine the issue of whether a payment pursuant to the plan was "akin to the type of future earning envisioned by the federal exemption." 134 B.R. at 614. The test to determine whether the plan met that requirement was "whether the plan exists for the purpose of providing future earnings to the Debtor in a time of need or whether the state employee plan is merely a way for the Debtor to receive a tax break through deferring income." *Id.* at 615.[7]

Judge Howard concluded that because the withdrawal restrictions were so limited, the deferred compensation plan was less comparable to a tax savings device and more comparable to a type of plan listed in § 522(d)(10)(E). He also concluded that the provision in the plan for a hardship withdrawal did not defeat the claimed exemption. As grounds, he stated as follows:

> Hardship withdrawal is easily likened to disability as an unforeseen event necessitating payment. The conditions for payment provided in Deferred Compensation Plan I meet the Code's requirement for an exemption to be provided to the Debtor for payment and provide certainty to the conclusion that Deferred Compensation Plan I cannot be viewed as an investment or savings plan outside of the exemption provided by the Code.

134 B.R. at 616.

▇ I agree with the test that the judge set forth in *Rector* to determine whether a

payment was akin to a future earning and therefore entitled to an exemption under the statute. Using that test, I conclude that because of the way in which the plan administrator construes the term "unforeseeable emergency", payments for that reason are only made to provide future earnings in a time of need which is comparable to disability, illness or age.

Having concluded that the Plan is entitled to be exempted pursuant to 11 U.S.C. § 522(d)(10)(E), I will conduct an evidentiary hearing on April 2, 1996 at 10:30 a.m. to determine whether any payment under the plan would be reasonably necessary for the support of the Debtor and any dependant of the Debtor. I will enter an order on the Trustee's objection at that time.

---

**7.** The court in *Rector* implicitly rejected the test for determining if a plan were akin to a debtor's future earnings set forth in *Pauquette*. I agree as

I find the *Pauquette* test does not comport with the statute.