**In re Louis C. HALL, Debtor.**

**Bankruptcy No. GK91–81542.**

United States Bankruptcy Court,
W.D. Michigan.

Feb. 18, 1993.

William H. Shaw, Kalamazoo, MI, for Debtor.

Robert E.L. Wright, Kalamazoo, MI, for Richard C. Remes, Chapter 7 Trustee of Middle Earth Graphics, Inc.

Gary Shinners, Magalia, CA, for N.L.R.B.

Paul F. Davidoff, Kalamazoo, MI, for Thomas A. Bruinsma, Successor Chapter 7 Trustee of Louis C. Hall.

## OPINION REGARDING DEBTOR'S CLAIMS OF EXEMPTION

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUES

This contested matter requires the court to determine whether certain retirement plans are exempt from an individual chapter 7 debtor's bankruptcy estate. First, is a pension plan maintained by and benefitting only a sole shareholder and his spouse property of the estate pursuant to 11 U.S.C. § 541(c)(2)?[1] Second, if the pension plan is property of the estate, may the pension plan be exempted pursuant to § 522(d)(10)(E)? Third, may an individual retirement plan be exempt from property of the estate pursuant to § 522(d)(10)(E)?

### II. JURISDICTION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (B), and (O). The court has the authority to enter a final order in this contested matter. 28 U.S.C. § 157(c)(2). The following constitutes the court's findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

### III. PROCEDURAL BACKGROUND

Louis C. Hall (herein "Debtor") filed a chapter 13 petition on March 15, 1991. The case was converted to chapter 7 on January 6, 1992. Upon conversion of the case, the Debtor filed amended bankruptcy schedules including a new Schedule C—Property Claimed as Exempt. The Debtor has claimed as exempt, *inter alia*, his interest

---

[1] Unless otherwise noted, all future statutory references are to Title 11 of the United States Code, sometimes referred to as the "Bankruptcy Code" or "Code".

in the Middle Earth Graphics, Inc.[2] Pension Plan (herein "Pension Plan") and an individual retirement plan each pursuant to § 522(d)(10)(E).

On February 14, 1992, the Trustee for Middle Earth Graphics (herein "Middle Earth Trustee") filed an Objection to Debtor's Claim of Exemption regarding the Pension Plan. On February 28, 1992, the National Labor Relations Board (herein "NLRB") filed an Objection to Debtor's Claims of Exemption respecting both the Pension Plan and the individual retirement plan. On May 18, 1992, the Debtor's Chapter 7 Trustee (herein "Hall Trustee") filed Trustee's Objection to Exemption Claim opposing the claimed individual retirement plan exemption.

On July 31, 1992, the court held a consolidated evidentiary hearing regarding all three objections. The court heard testimony from four witnesses[3], admitted fifteen exhibits into evidence[4], and listened to argument of counsel. Upon conclusion of the hearing, the court requested supplemental memoranda of law and took the matter under advisement.

After trial and before release of this opinion, the parties conditionally settled this matter as well as other disputes. The court was requested to withhold issuance of an opinion. The court was subsequently advised that certain conditions were not satisfied and a global settlement was not then possible. Although the parties have continued discussions, at this time no settlement pleadings have been docketed. It is now appropriate to release this opinion.

## IV. FACTS

The Debtor was the president and sole shareholder of a printing company named Middle Earth Graphics. (Trans. at 114.) The Debtor's spouse, Janet Hall, was the secretary of Middle Earth Graphics.[5] (Trans. at 18.) On September 13, 1985, the Board of Directors of Middle Earth Graphics established the Pension Plan and the Middle Earth Graphics, Inc. Retirement Plan (herein "Retirement Plan" or collectively referred to with the Pension Plan as "the Plans"). (Trustee's Ex. 1; Trans. at 20, 114.) The effective date of the Plans was October 1, 1984. (Trustee's Ex. 1 & 2.) The Plans were established because Middle Earth Graphics was profitable in 1984 and its future business projections were encour-

---

**2.** Prior to filing his individual bankruptcy case, the Debtor was the sole shareholder and president of Middle Earth Graphics, Inc. (herein "Middle Earth Graphics"). Middle Earth Graphics filed a chapter 11 petition on March 13, 1991. The chapter 11 was converted to chapter 7 on July 16, 1991. Middle Earth Graphics has filed a claim in the Debtor's case in the amount of $750,000.

**3.** The witnesses were Janet D. Hall, Joseph A. Spoerl, Robert Elwell and the Debtor. Future references to the testimony will be designated as "Trans. at [page]".

**4.** The Middle Earth Trustee, the NLRB and the Hall Trustee participated in the hearing jointly. The Middle Earth Trustee, NLRB, and the Hall Trustee's exhibits were marked as "Trustee's Ex. 1–12"; the Debtor's exhibits were marked as "Debtor's Ex. A–C."

The Trustee's Exhibits are: a copy of the Pension Plan (Trustee's Ex. 1); copies of the 1988 IRS Form 5500–R packages for both the Pension Plan and the Retirement Plan (Trustee's Ex. 2); a copy of minutes from the Board of Directors of Middle Earth Graphics dated September 15, 1986 (Trustee's Ex. 3); a copy of an undated notice of termination to the trustee of the Pen-

sion Plan (Trustee's Ex. 4); a copy of an undated notice of termination to the participants of the Pension Plan (Trustee's Ex. 5); a copy of the 1985 IRS Form 5500–R package for the Pension Plan (Trustee's Ex. 6); a copy of the 1987 IRS Form 5500–R package for the Pension Plan (Trustee's Ex. 7); a copy of the 1989 IRS Form 5500–R package for the Pension Plan (Trustee's Ex. 8); a copy of the 1990 IRS Form 5500–R package for the Pension Plan (Trustee's Ex. 9); a copy of a September 9, 1988 letter form Improved Funding Techniques Inc. to the Debtor regarding termination of the Plans and distribution of funds (Trustee's Ex. 10); a September 28, 1990 letter from Improved Funding Techniques Inc. regarding termination of the Retirement Plan and IRS requirements (Trustee's Ex. 11); and copies of attorney fee invoices (Trustee's Ex. 12).

The Debtor's Exhibits are: an IRS determination letter dated January 19, 1988 (Debtor's Ex. A); Middle Earth Graphics' financial statements for the year ended September 30, 1985 (Debtor's Ex. B); and Middle Earth Graphics' financial statements for the year ended September 30, 1986 (Debtor's Ex. C).

**5.** Janet Hall is a chapter 13 debtor in a separate case pending before this court.

aging. The Debtor testified the purposes for establishing the Plans were to provide Middle Earth Graphics a "tax break, preserve some working cash, as well as give incentive for long time employees to remain with us and take care of our own retirement." (Trans. at 166.)

In 1985, Middle Earth Graphics funded the Plans by making contributions of $115,-000. (Debtor's Ex. B.) Middle Earth Graphics borrowed $95,000 of this amount from Old Kent Bank. The bank took a blanket security interest on all of Middle Earth Graphic's assets.[6] (Trans. at 121–22.) In 1986, Middle Earth Graphics made contributions to the Plans totalling $62,458. (Debtor's Ex. C.)

The Pension Plan was established for the exclusive benefit of the Debtor and his spouse. The Debtor and Janet Hall were the trustees, sole beneficiaries, and only participants of the Pension Plan. (Trustee's Ex. 1; Trans. at 115.) At the time of its inception, the Pension Plan was qualified under the applicable provisions of the Internal Revenue Code[7] and the Employee Retirement Income Security Act of 1974 (herein "ERISA").[8] (See Debtor's Ex. A.) The Pension Plan contains an anti-alienation provision.[9] I.R.C. § 401(a)(13); 29 U.S.C. § 1056(d)(1) (ERISA § 206(d)(1)). The Retirement Plan was established for the benefit of Middle Earth Graphics' hourly employees. (Trans. at 20.) The Debtor testified the Retirement Plan covered four or five employees when it was established. (Trans. at 202.)

The Board of Directors of Middle Earth Graphics held a special meeting on September 15, 1986. At this meeting, a resolution terminating the Pension Plan was adopted, effective as of October 1, 1986. (Trustee's Ex. 3.) Notices of the termination were issued to the trustees and participants of the Pension Plan on September 15, 1986. (Trustee's Ex. 4 & 5.) Neither the Debtor nor Janet Hall has ever requested the Pension Plan funds be distributed. (Trans. at 36, 134.) Currently, the value of the Pension Plan is approximately $135,000. (Trans. at 97.)

Even though the minutes to the September 15, 1986 Board of Director's meeting, the Notice to the Pension Plan trustees, and the Notice to the Pension Plan participants indicate otherwise, the Debtor and Janet Hall maintain the Board of Directors of Middle Earth Graphics never intended to terminate the Pension Plan. (See Trustee's Ex. 3, 4 & 5.) Both the Debtor and Janet Hall contend the purpose of the Board of Directors was to suspend contributions to the Pension Plan because of a significant decrease in the profitability of Middle Earth Graphics. (Trans. at 34–35, 118.) The Debtor claims the Board of Directors intended to recommence contributions to the Pension Plan upon Middle Earth Graphics regaining adequate profitability. (Trans. at 118.) Middle Earth Graphics subsequently became more profitable but no further contributions to the Pension Plan have been made. (Trans. at 157.) Middle Earth Graphics continued to file the necessary reports with the IRS regarding the status and assets of the Pension Plan.[10] (Trustee's Ex. 2, 6–9; Trans. at 133–34.)

The Debtor originally established the individual retirement plan with First of America Bank in the late 1970's or early

---

**6.** Shortly after the Plans were funded, the Pension Plan loaned $50,000 to the Debtor and $10,000 to Janet Hall. (Trans. at 25, 122.) The Debtor and Janet Hall then loaned these proceeds to Middle Earth Graphics for working capital. Middle Earth Graphics then repaid the loans to the Pension Plan through corporate checks. (Trans. at 122.)

**7.** See 26 U.S.C. §§ 1–9602. For purposes of this opinion, future references to title 26 of the United States Code will be cited as "I.R.C. § ___".

**8.** See 29 U.S.C. §§ 1001–1461 (ERISA §§ 1–4402).

**9.** Paragraph 15.07 of the Pension Plan provides "[n]o Participant or Beneficiary may assign, alienate, encumber, anticipate or otherwise dispose of any benefits hereunder...." (Trustee's Ex. 1, at ¶ 15.07.)

**10.** The Debtor and Janet Hall were well aware of the plight of the Pension Plan. They attended the Board of Directors meeting, prepared the required termination notices, and sent the notices to themselves as both trustees and participants of the Pension Plan.

.1980's. The individual retirement plan was subsequently transferred to Equitable Life Insurance Company which presently holds all of the funds. All contributions to the individual retirement plan were made through automatic withdrawals from the Debtor's checking account. The Debtor did not transfer or withdraw any funds from the individual retirement plan in the year prior to the bankruptcy filing. The amount of the individual retirement plan, although not clearly known, is at least $14,000.[11] (Trans. at 159–62.)

## V. DISCUSSION

### A. *The Pension Plan.*

■ The Middle Earth Trustee and NLRB [12] have objected to the Debtor's claimed exemption of the Pension Plan. Before considering the Debtor's claimed exemption under § 522(d)(10)(E), the Pension Plan must first be determined to be property of the estate pursuant to § 541 of the Bankruptcy Code. If the Pension Plan is "ERISA qualified" it is not property of the estate under § 541(c)(2). The Middle Earth Trustee argues: (1) the Pension Plan is not "ERISA qualified" because it was properly terminated under ERISA law and it no longer comports with I.R.C. §§ 401(a) & 410; and (2) even if the Pension Plan was suspended, rather than terminated, it still is not an "ERISA qualified plan".

If the Pension Plan is property of the estate, the Middle Earth Trustee argues it may not be exempted pursuant to § 522(d)(10)(E) because: (1) the Pension Plan is excepted from the exemption pursuant to § 522(d)(10)(E)(i)–(iii); and (2) even if the Pension Plan does not come within the exception to § 522(d)(10)(E), the Debtor has not shown the lump sum benefit is "reasonably necessary for the support of the debtor".

The Debtor argues the status of the Pension Plan as terminated or suspended is irrelevant because it is not property of estate under § 541(c)(2) of the Code. If the Pension Plan is property of the estate, the Debtor asserts his interest is properly exempt and the entire amount of funds held in the Pension Plan are "reasonably necessary for [his] support". 11 U.S.C. § 522(d)(10)(E).

#### 1. Is the Pension Plan Property of the Estate?

Section 541(c)(2) of the Bankruptcy Code states:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

In *Patterson v. Shumate,* —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court interpreted § 541(c)(2) specifically focusing on the phrase "applicable nonbankruptcy law". In *Shumate,* the pension plan satisfied all applicable requirements of ERISA and qualified for favorable tax treatment under the Internal Revenue Code. 112 S.Ct. at 2245. The pension plan also contained the anti-alienation provision required by ERISA. *Id.* (citing 29 U.S.C. § 1056(d)(1) (ERISA § 206(d)(1)).[13]

Prior to *Shumate,* the Circuit Courts of Appeal were divided regarding whether "nonapplicable bankruptcy law" under § 541(c)(2) applied only to state spendthrift law or also encompassed federal law including ERISA. *See* —— U.S. at —— n. 1, 112

---

**11.** There is very little testimony regarding the individual retirement plan. Curiously, neither the Hall Trustee, the NLRB, nor the Debtor sought admission of the individual retirement plan at trial. The court cannot determine whether the plan is an annuity or an account. *See* I.R.C. § 408(a)–(b).

**12.** During the evidentiary hearing and in its Post–Trial Memorandum in Support of Objections to Debtor's Claim of Exemption, the NLRB supported the argument made by the Middle Earth Trustee regarding the Pension Plan with-

out independent discussion or analysis. Therefore, even though the court only refers to argument made by the Middle Earth Trustee, it is acknowledged these arguments are supported by the NLRB.

**13.** ERISA § 206(d)(1) states "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." The Internal Revenue Code also requires anti-alienation for a pension plan to be "qualified" for tax benefits. I.R.C. § 401(a)(13).

S.Ct. at 2246 n. 1 (collection of cases for both interpretations of § 541(c)(2)). The *Shumate* Court relied upon the plain language of the Bankruptcy Code to hold "nonapplicable bankruptcy law" under § 541(c)(2) includes state spendthrift law and federal law. *Id.,* —— U.S. at ——, 112 S.Ct. at 2246–47. The Court, reading § 541(c)(2) together with the remainder of the Bankruptcy Code, found Congress intended § 541(c)(2) to apply to both federal and state law. "The Code reveals ... Congress, when it desired to do so, knew how to restrict the scope of applicable laws to 'state law' and did so with some frequency." *Id.,* —— U.S. at ——, 112 S.Ct. at 2246 (citing 11 U.S.C. §§ 109(c)(2), 522(b)(1), 523(a)(5), 903(1), 362(b)(12) & 1145(a)).

After determining ERISA is included as "nonapplicable bankruptcy law" under § 541(c)(2), the Court analyzed the anti-alienation provision of the pension plan to determine whether "the ERISA-qualified plan at issue ... satisfies the literal terms of § 541(c)(2)." [14] *Id.,* —— U.S. at ——, 112 S.Ct. at 2247. The Court determined because the pension plan contained the requisite anti-alienation clause, there was a restriction upon the transfer of an interest of the debtor in a trust. Therefore, § 541(c)(2) was satisfied and the "ERISA qualified" plan was excluded from property of the estate. *Id.,* —— U.S. at ——, 112 S.Ct. at 2247–48.

### a. *What is an "ERISA Qualified" Plan?*

*Patterson v. Shumate* definitively laid to rest the issue of whether ERISA is included as "nonapplicable bankruptcy law" pursuant to § 541(c)(2). However, the Supreme Court has left undecided which types of pension plans constitute "ERISA-qualified" plans.

[The *Shumate* decision] does not resolve questions concerning which types of plans should have their benefits excluded from the bankruptcy estate. Under *Shumate,* the determination that a debtor's interest in a plan is protected is based on the status of the plan as "ERISA qualified," not the existence of the particular beneficiary-settlor relationship associated with a spendthrift trust. The term "ERISA qualified," however, is not a term of art and is not defined in the Bankruptcy Code, the IRC, or ERISA. Furthermore, it is not even a term used by employee benefit practitioners.

Christy & Skeldon, *Shumate and Pension Benefits in Bankruptcy,* 2 J.BANKR.L. & PRAC. 719, 722–23 (1992) [hereinafter Christy & Skeldon]. Therefore, while the *Shumate* Court conclusively decided a major bankruptcy issue, it did not *directly* address what is, or is not, an "ERISA qualified" plan.

ERISA and the Internal Revenue Code are the two statutes which must be reviewed to determine which types of pension plans are "ERISA qualified". It seems clear from the term "ERISA qualified" that ERISA establishes some criteria for qualification of pension plans. But, in fact, ERISA speaks of "coverage" of pension plans and does not mention "ERISA qualification". *See* 29 U.S.C. § 1002(2)(A) (ERISA § 3(2)(A)). The statutory semantics for an ERISA pension plan does not include the term "ERISA qualified". A plan is *subject to ERISA* if it is "established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances such plan ... provides retirement income to employees, or ... results in a deferral of income by employees for periods extending to the termination of covered employment or beyond...." 29 U.S.C. § 1002(2) (ERISA § 3(2)).

[Pension] plans do not qualify under ERISA, at least not in the sense they qualify for special treatment under the IRC. Rather, ... the plan is *subject to ERISA* if the plan [comports with ERISA § 3(2) ].... A plan is *subject to ERISA* solely on the basis of the type of benefits it provides. Beyond that there is nothing under ERISA similar to the multitudi-

---

**14.** Specifically, the Court analyzed whether the pension plan contained a "restriction on the transfer of a beneficial interest ... in a trust

that is enforceable" under ERISA. *See* 11 U.S.C. § 541(c)(2).

nous requirements under the IRC. *Accordingly, employee benefit practitioners refer to "plans subject to ERISA," "plans governed by ERISA," or "ERISA plans," but they do not generally refer to "ERISA qualified" plans.* Christy & Skeldon, *supra,* at 725 (emphasis added).

The Internal Revenue Code establishes certain criteria for a pension plan to be *"tax qualified". See* I.R.C. § 401(a).[15]

Employee benefits practitioners consistently use the phrase "qualified plan" as synonymous with "tax qualified plan." They use the phrase to refer to a pension, profit-sharing, stock bonus, or similar plan that satisfies the numerous requirements of IRC Section 401(a). A plan that satisfies IRC Section 401(a) is called a "qualified plan" because the section itself refers to the trusts of such plans as "qualified trust" and because satisfaction of that section's requirements "qualifies" the trust under such a plan as tax-exempt.

Christy & Skeldon, *supra,* at 724–25 (footnotes omitted).[16]

Arguably, the *Shumate* Court may have intended any one of three interpretations for the term "ERISA qualified" plan: (1) a plan subject to ERISA; (2) a plan subject to ERISA which contains an anti-alienation clause; or (3) a plan that is tax qualified under I.R.C. § 401(a), subject to ERISA,

and has an anti-alienation provision as required by ERISA § 206(d)(1). Christy & Skeldon, *supra,* at 725.[17]

Because *Shumate* is of recent vintage, there is a paucity of case law interpreting the term "ERISA qualified" plan. Some post-*Shumate* cases either find or seem to assume existence of an "ERISA qualified" plan without discussion. *See, e.g., Iannacone v. Northern States Power Co. (In re Conlan ),* 974 F.2d 88, 89 (8th Cir.1992) ("ERISA qualified" pension plan not in dispute); *In re Dunham,* 147 B.R. 13, 13 (Bankr.E.D.N.C.1992) ("ERISA qualified" profit sharing plan without discussion); *In re Jones,* 142 B.R. 950, 951 (Bankr. W.D.Wash.1992) ("ERISA qualified" Keough plan assumed given anti-alienation provision). Only very recent decisions have begun to focus on whether a plan is "ERISA qualified".

In *In re Sirois,* 144 B.R. 12 (Bankr. D.Mass.1992) and *In re Greif,* 144 B.R. 206, 208 (Bankr.D.Mass.1992), Judge Goodman analyzed *Shumate* and acknowledged a determination may be necessary whether a plan is "ERISA qualified" before excluding it from property of the estate. *See Sirois,* 144 B.R. at 14; *Greif,* 144 B.R. at 208. *Sirois* and *Greif* did not reach the merits of the "ERISA qualification" issue because evidentiary hearings had not been held. Although *Greif* does not address the

---

**15.** A legal mountain must be climbed to obtain tax qualified status. The applicable section has four main subsections with requirements for tax qualification. I.R.C. § 401(a)(1)–(4). An additional 26 subsections supplement or clarify the four main requirements. *Id.* § 401(a)(5)–(30).

**16.** There are numerous benefits if a pension plan is "tax qualified" pursuant to I.R.C. § 401(a). The employer is entitled to a deduction for contributions to a trust fund under a pension plan. I.R.C. § 401(a) & 404. Employees are not taxed on pension plan benefits until they actually receive the distributions. *Id.* § 402(a). As a general rule, the income derived from tax qualified plans will be exempt from corporate income taxation. *Id.* § 501(a).

**17.** At least one law review article has recognized the ambiguity in the use of the "ERISA qualified plan" by the *Shumate* Court.

It would not be surprising to see future courts having to address such issues when such distinctions could lead to different re-

sults. For example, if a creditor were attempting to reach benefits in a plan that had once been qualified under IRC Section 401(a) but that had become disqualified by reason of the employer's failure to amend the plan to include a new provision required by a change in the law, the creditor could argue that the *Shumate* Court used the phrase "ERISA qualified" plan to mean a plan that was both qualified under IRC Section 401(a) and subject to ERISA. However, Section 206(d) of ERISA operates completely independently of the IRC qualification requirements, and since the IRC does not itself confer substantive rights on participants, a debtor could argue the plan still qualified under ERISA. *Shumate's* definition of protected plans then is ambiguous and leaves open the term to future courts' interpretation.

Christy & Skeldon, *supra,* at 725 (footnote omitted).

issue, *Sirois* implies that an "ERISA qualified plan" must be subject to ERISA, qualify under I.R.C. § 401(a), and contain an anti-alienation clause.[18]  144 B.R. at 14.

Some seemingly cryptic language in *Shumate* itself supports the conclusion "ERISA qualified" plans are tax qualified under I.R.C. § 401(a), subject to ERISA, and contain an anti-alienation provision.

> [W]e next determine whether the anti-alienation provision contained in the ERISA-qualified plan at issue here satisfies the literal terms of § 541(c)(2).
>
> Section 206(d)(1) of *ERISA*, which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated".... The coordinate section of the *Internal Revenue Code*, 26 U.S.C. § 401(a)(13), states as a general rule that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated," and thus contains similar restrictions. See also *26 CFR 1.401(a)–13(b)(1) (1991)*.
>
> [The pension plan] complied with *these requirements....*

— U.S. at ——, 112 S.Ct. at 2247 (emphasis added).

Why does the Court cite ERISA, the tax code and a tax regulation? If "ERISA qualified" is determined without regard to tax law, why would the Court cite the Internal Revenue Code and a tax regulation? A reasonable reading of this language leads one to conclude that the unanimous *Shumate* Court requires an "ERISA qualified" plan must satisfy *both* the Internal Revenue Code and ERISA.

Because this court is in Michigan, Sixth Circuit authority regarding this issue must be carefully reviewed. In *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991), the Sixth Circuit held, before *Shumate* was decided, that "nonapplicable bankruptcy law" under § 541(c)(2) includes both federal law and state spendthrift trust law. *Id.* at 601.

The Sixth Circuit analyzed whether the pension plan contained an "enforceable"[19] transfer restriction pursuant to § 541(c)(2). *Id.* at 602. The pension plan in *Lucas* was qualified under I.R.C. § 401(a), subject to ERISA, and contained the anti-alienation clause required by ERISA § 206(d)(1). *Id.* at 598. The court concluded the pension plan was an enforceable restriction on the transfer of an interest of the debtor in a trust pursuant to § 541(c)(2). The court reasoned that its conclusion: (1) harmonizes the Bankruptcy Code, ERISA and the Internal Revenue Code; (2) prevents a pension plan from being subject to disqualification and loss of tax exempt status when the trustee seeks turnover of the plan; and (3) guarantees uniform treatment of benefits. *Id.* at 603.

Given this discussion, there is a very strong indication that the Sixth Circuit requires an "ERISA qualified" plan: (1) to be tax qualified under I.R.C. § 401(a), (2) subject to ERISA, and (3) to include an anti-alienation provision.[20]  If even one require-

---

18. "Assuming that the pension plan is qualified under ERISA *and* the Internal Revenue Code, the Debtor's interest in [the] profit sharing plan is excluded from his bankruptcy estate...." 144 B.R. at 14 (emphasis added).

The commentators who have thus far discussed this issue differ on which types of pension plans are "ERISA qualified". *Compare* Christy & Skeldon, *supra*, at 725 n. 25 ("The term 'ERISA qualified' plan, can be most reasonably interpreted as meaning 'plan subject to ERISA.' ") *with* Seiden, *Chapter 7 Cases: Do ERISA and the Bankruptcy Code Conflict as to whether a Debtor's Interest in or Rights Under a Qualified Plan Can be Used to Pay Claims*, 61 Am.Bankr.L.J. 219, 221 (1987) ("ERISA qualified"

plan must be tax qualified under I.R.C. § 401(a) and subject to ERISA).

19. The issue in *Shumate* focused on the term "applicable nonbankruptcy law" as applied in § 541(c)(2). Whether a pension plan is "ERISA qualified" involves an analysis of whether a restriction on a transfer is "enforceable" under applicable nonbankruptcy law pursuant to § 541(c)(2).

20. Certain pre-*Shumate* Circuit Court of Appeals decisions have either expressly or impliedly decided "ERISA qualified" plans are tax qualified under I.R.C. § 401(a), subject to ERISA, and contain anti-alienation provisions. *See, e.g., Gladwell v. Harline (In re Harline)*, 950 F.2d

ment is not satisfied, a plan is *not* "ERISA qualified".[21]

### b. *Is this Pension Plan "ERISA Qualified"?*

■ ERISA applies "to any employee benefit plan if it· is established or maintained ... by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1) (ERISA § 4(a)(1)). An "employee benefit plan" is defined, in part, as "an employee pension benefit plan." 29 U.S.C. § 1002(3)·(ERISA § 3(3)).

> [T]he terms "employee pension benefit plan" and "pension plan" mean any plan ... which was heretofore or is hereafter established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances such plan, ... (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond
>
>     . . . .

29 U.S.C. § 1002(2)(A) (ERISA § 3(2)(A)).

■ A rudimentary requirement of ERISA is "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan...." 29 U.S.C. § 1103(c)(1) (ERISA § 403(c)(1)). A "participant" is "any employee or former employee of any employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7) (ERISA § 3(7)). Reading these two sections together establishes that for a plan to be subject to ERISA, it must exclusively provide benefits to employees and former employees.

The Secretary of Labor is authorized to promulgate regulations necessary to implement the provisions of ERISA. 29 U.S.C. § 1135 (ERISA § 505). Pursuant to this authority, the Secretary of Labor has narrowed the definition of "employee benefit plan" under ERISA and clarified the "exclusive benefit" rule.

> (a) *General.* This section clarifies the definition ... of the term "employee benefit plan"....
>
> (b) *Plans without employees.* For purposes of title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan ... under which *no employees are participants covered under the plan....*
>
> (c) *Employees.* For purposes of this section:
>
> (1) *an individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse....*

29 C.F.R. § 2510.3–3 (emphasis added).

*In re Witwer,* 148 B.R. 930 (Bankr. C.D.Cal.1992), is a post-*Shumate* case which analyzed the term "ERISA qualified" plan. The facts in *Witwer* are somewhat analogous to those in this contested matter. In *Witwer,* the debtor was the sole shareholder, president and only employee of an incorporated medical practice. The debtor was the sole participant and beneficiary of a pension plan established by his incorporated medical practice. The debtor filed chapter 7 and claimed as exempt his interest in the pension plan which was valued at $1,700,000. The pension plan contained the requisite anti-alienation provision. *Id.* at 935.

---

669, 672–73 (10th Cir.1991) (court analyzes "qualification" of plan by examining ERISA and Internal Revenue Code; *inter alia,* "[t]o be 'qualified' means the contributions are tax deductible ...."); *Velis v. Kardanis,* 949 F.2d 78, 79–80 (3d Cir.1991) (undisputed that plan was qualified pursuant to ERISA and Internal Revenue Code); *Anderson v. Raine* (*In re Moore* ), 907 F.2d 1476, 1480 (4th Cir.1990) (implies pension plan must

contain anti-alienation provision satisfying both ERISA and the Internal Revenue Code).

**21.** This court notes the contrary argument that "ERISA qualified" should only be interpreted as a plan subject to ERISA which contains the requisite anti-alienation provision may also be viable. *See* Christy & Skeldon, *supra,* at 725–26 n. 25.

The *Witwer* court also determined an "ERISA qualified" plan must be subject to ERISA, tax qualified pursuant to I.R.C. § 401(a), and contain an anti-alienation provision. *Id.* at 936. The court applied 29 C.F.R. § 2510.3–3 to the pension plan and held it was not subject to ERISA. The court reasoned the debtor was not a participant under ERISA because the regulation "unambiguously debars a sole shareholder from employee status." *Id.* Therefore, the plan could not be "ERISA qualified" because it had no participants and did not meet the definition of "employee pension benefit plan". *Id.* (citing 29 U.S.C. § 1002(2)(A) (ERISA § 3(2)(A)).

In *Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178 (6th Cir.1992), the Sixth Circuit analyzed this same regulation with regard to a group health insurance policy. After analyzing the regulation, the Sixth Circuit determined "a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA." *Id.* at 185 (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 264 (9th Cir.1991)). Additionally, the Sixth Circuit concluded "a sole proprietor or sole shareholder of a business must be considered an *employer and not an employee* of the business for purposes of ERISA." *Id.* at 186 (emphasis added). Consequently, the court held because the plaintiff was the sole proprietor of the business, he and his wife were not "employees" and therefore the plan was not subject to ERISA.[22] *Id.*

In the matter at bar, the Debtor testified he was the president and sole shareholder of Middle Earth Graphics at the time the Pension Plan was executed. (Trans. at 114.) The Pension Plan explicitly provides that the Debtor and Janet Hall are the only persons eligible to be participants. The Debtor and Janet Hall are also the trustees of the Pension Plan. (Trustee's Ex. 1, at ¶¶ 1.26 & 2.01.)

Considering these facts alone, this court concludes the Pension Plan is a plan without employees. The Debtor and his spouse are the sole and exclusive beneficiaries of the Pension Plan. The Debtor was the sole shareholder of Middle Earth Graphics. Therefore, the Debtor and his spouse are considered employers, not employees, of Middle Earth Graphics for ERISA purposes. 29 C.F.R. § 2510.3–3(c)(1). The Pension Plan violates a fundamental requirement of ERISA that assets of a plan must be used for the exclusive benefit of employees. *See* 29 U.S.C. §§ 1002(7) & 1103(c)(1) (ERISA §§ 3(7) & 403(c)(1)). This court concludes the Pension Plan is not subject to ERISA.

The Pension Plan is not "ERISA qualified" because it is not subject to ERISA[23]. Because the Pension Plan is not subject to ERISA, this court further concludes the restriction on transfer in paragraph 15.07 of the Pension Plan is not enforceable. The Pension Plan is property of the Debtor's chapter 7 estate because § 541(c)(2) is not satisfied.[24]

2. Is the Debtor's Interest in the Pension Plan Exempt?

The Debtor has claimed the Pension Plan as exempt property pursuant to

---

**22.** Other courts have utilized 29 C.F.R. § 2510.3–3 to conclude pension plans and other ERISA type investments were not subject to ERISA. *See Kennedy,* 952 F.2d at 264; *Kwatcher v. Massachusetts Serv. Employees Pension Fund,* 879 F.2d 957, 961–62 (1st Cir.1989); *Giardono v. Jones,* 867 F.2d 409, 412 (7th Cir.1989); *Robertson v. Alexander Grant & Co.,* 798 F.2d 868, 871–72 (5th Cir.1986), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987); *Schwartz v. Gordon,* 761 F.2d 864, 867–69 (2d Cir.1985); *Peckham v. Board of Trustees of the Int'l Bhd. of Painters and Allied Trades Union,* 653 F.2d 424, 427 (10th Cir.1981); *In re Pruner,* 140 B.R. 1, 3 (M.D.Fla.1992); *Witwer,* 148 B.R. at 935.

**23.** Because the "ERISA qualification" requirements are stated in the conjunctive, the court need not analyze I.R.C. § 401(a) to determine whether the Pension Plan is property of the estate under § 541(c)(2).

**24.** Because the Pension Plan is a plan without employees and not subject to ERISA, it is not necessary to make a determination regarding the effect of an asserted termination or suspension of the plan for § 541(c)(2) purposes. Regardless of whether a suspension or termination has occurred, the Pension Plan is not "ERISA qualified".

§ 522(d)(10)(E). That section exempts from property of the estate:

> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
>
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
>
> (ii) such payment is on account of age or length of service; and
>
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code....

11 U.S.C. § 522(d)(10)(E).

■ The Middle Earth Trustee asserts the Pension Plan may not be exempted from property of the estate because it meets the exception stated in § 522(d)(10)(E)(i)–(iii). Because the exception to § 522(d)(10)(E) is in the conjunctive, all three prongs must be satisfied for the Pension Plan to not be properly exemptible. *See Clotfelter v. CIBA–GEIGY Corp.,* 24 B.R. 927, 930 n. 4 (D.Kan.1982); *In re H.F. Grant,* 40 B.R. 612, 613 (Bankr.N.D.Tex. 1984); *In re Pauquette,* 38 B.R. 170, 173 (Bankr.D.Vt.1984); *In re Sheridan,* 38 B.R. 52, 57 (Bankr.1983); *In re Miller,* 33 B.R. 549, 552 (Bankr.D.Minn.1983); *In re Werner,* 31 B.R. 418, 422 (Bankr.D.Minn. 1983). To satisfy the three prong exception to § 522(d)(10)(E), the Middle Earth Trustee must prove [25]: (1) the Pension Plan was established by an insider; (2) any payment under the Pension Plan is on account of age or length of service; and (3) the Pension Plan is not tax qualified pursuant to certain sections of the Internal Revenue Code. *Werner,* 31 B.R. at 422.

■ If the debtor is an individual, an "insider" is defined, *inter alia,* as a "corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(A)(iv). The Debtor testified he was president of Middle Earth Graphics. (Trans. at 114.) Additionally, the testimony of the Debtor and Janet Hall evidence the Debtor was the person in control of Middle Earth Graphics. Middle Earth Graphics is an insider of the Debtor. 11 U.S.C. § 101(31)(A)(iv). Because the Pension Plan was established under the auspices of an insider, this court concludes the Middle Earth Trustee has satisfied the first prong of establishing the exception. 11 U.S.C. § 522(d)(10)(E)(i).

The Pension Plan specifically states its participants are entitled to a "normal retirement benefit" based upon attaining age sixty-five or employment with Middle Earth Graphics for seventeen years. (Trustee's Ex. 1, at ¶¶ 1.25 & 3.01.) Any payment from the Pension Plan is based on account of age or length of service. The Middle Earth Trustee has met the second prong of establishing the exception. 11 U.S.C. § 522(d)(10)(E)(ii).

Whether the Pension Plan qualifies under certain tax sections is less obvious. 11 U.S.C. § 522(d)(10)(E)(iii). I.R.C. §§ 403(a), 403(b), 408 & 409 do not appear to be relevant to the facts presented; the court will focus upon I.R.C. § 401(a).[26] The Mid-

---

25. FED.R.BANKR.P. 4003(c) provides that the objecting party has the burden of proving an exemption is not properly claimed. The burden of prove is by a preponderance of the evidence. *See In re Yee,* 147 B.R. 624, 625 (Bankr.D.Mass. 1992); *In re Magnus,* 84 B.R. 976, 978 (Bankr. E.D.Pa.1988); *In re Woodford,* 73 B.R. 675, 679 (Bankr.N.D.N.Y.1987); *In re Brooks,* 60 B.R. 155, 159 (Bankr.N.D.Tex.1986).

26. The sections of the Internal Revenue Code which are applicable to § 522(d)(10)(E)(iii) can be summarized as follows:

26 U.S.C. 401(a) is the section establishing rules and regulations for qualifying pension, profitsharing and stock bonus plans.

26 U.S.C. 403(a) establishes rules governing taxation of employee annuities received as a result of *payments made under a qualified* employer annuity.

26 U.S.C. 403(b) deals with taxation of benefits received by a beneficiary under an annuity purchased by a section 501(c)(3) organization or public school.

26 U.S.C. 408 establishes individual retirement accounts.

26 U.S.C. 409 is the section dealing with the establishment of retirement bonds.

dle Earth Trustee argues the Pension Plan is not tax qualified pursuant to I.R.C. §§ 401(a)(26), 401(a)(13) and 401(a)(4). (*See* Middle Earth Trustee's Brief in Support of Objection to Debtor's Exemption at 18–23.)

I.R.C. § 401(a)(26) is the minimum participation rule. This section provides, in pertinent part:

(A) *In general.*—A trust shall not constitute a qualified trust under this subsection unless such trust is part of a plan which on each day of the plan year benefits the lesser of—

(i) 50 employees of the employer, or

(ii) 40 percent or more of all employees of the employer.

I.R.C. § 401(a)(26). The minimum participation rule was added to I.R.C. § 401(a) by the Tax Reform Act of 1986 and is effective for plan years beginning after December 31, 1988. *See* 26 C.F.R. § 1.401(a)(26)–9(a); S. Bruce, Pension Claims Rights and Obligations 39 (1988) [hereinafter Bruce]. The intent of the rule is to prevent small businesses from forming several pension plans covering different groups of employees. I.R.C. § 401(a)(26) is an attempt to stop employers from favoring important or highly paid employees and discriminating against rank and file employees. Bruce, *supra,* at 39–40 n. 46.

The Department of Treasury has issued regulations to assist in defining and supplementing I.R.C. § 401(a)(26). Pursuant to these regulations, to satisfy the minimum participation rule, a defined benefit plan [27] must comply with 26 C.F.R. § 1.401(a)(26)–3. *See* 26 C.F.R. § 1.401(a)(26)–1(a) [28]. 26 C.F.R. § 1.401(a)(26)–3(c) provides, in pertinent part:

A plan's prior benefit structure satisfies this paragraph if the plan provides meaningful benefits to a group of employees that includes the lesser of 50 employees or 40 percent of the employer's employees. Thus, a plan satisfies the requirements of this paragraph (c) if at least 50 employees or 40 percent of the employer's employees currently accrue meaningful benefits under the plan. *Alternatively, a plan satisfies this paragraph if a least 50 employees and former employees or 40 percent of the employer's employees and former employees have meaningful accrued benefits under the plan.*

(Emphasis added.)

The Pension Plan was established and maintained for two participants—the Debtor and Janet Hall. (Trustee's Ex. 1, at ¶ 2.01.) According to its express terms, the Pension Plan has never benefited fifty employees of Middle Earth Graphics. Therefore, to satisfy I.R.C. § 401(a)(26), the Pension Plan must benefit forty percent or more of all employees or former employees of Middle Earth Graphics.[29]

---

*In re McCabe,* 74 B.R. 119, 121 (Bankr.N.D.Iowa 1986).

**27.** A "defined benefit plan" is a plan which "promises a participant a specific amount of pension benefits at retirement determined under a formula based on years of participation in the plan, and ... based on an average of compensation." A defined benefit plan promises certain and definable benefits to a plan participant upon retirement. Bruce, *supra,* at 18. In contrast, a "defined contribution plan" promises "that an employer will contribute to the plan on a specified bases, but [does] not promise that the contributions will produce specific benefits at retirement." *Id.* Examples of defined contribution plans include a savings (or thrift) plan, profit sharing plans, and stock bonus plans. *Id.* at 19–20.

The Pension Plan promises a specific retirement benefit based upon years of participation and average of compensation. (Trustee's Ex. 1, at ¶¶ 3.01–3.08.) Therefore, the Pension Plan is a defined benefit plan. (*See* Trustee's Ex. 2, 6 &

7.) The Retirement Plan is apparently a defined contribution plan. (*See* Trustee's Ex. 2.)

**28.** 26 C.F.R. § 1.401(a)(26)–1(a) provides:

A plan is a qualified plan for a plan year only if the plan satisfies section 401(a)(26) for the plan year.... A plan ... must satisfy § 1.401(a)(26)–2(a). In addition, a defined benefit plan must satisfy § 1.401(a)(26)–3 with respect to its prior benefit structure....

Because a defined benefit plan must satisfy 26 C.F.R. § 1.401(a)(26)–3, the court will first analyze that section and then, if necessary, it will analyze 26 C.F.R. § 1.401(a)(26)–2(a).

**29.** An interesting issue is whether the Debtor and Janet Hall are considered "employees" for I.R.C. § 401(a)(26) purposes. As previously discussed, this court concluded, pursuant to 29 C.F.R. § 2510.3–3(c), that the Debtor and Janet Hall were not "employees" of Middle Earth Graphics for ERISA purposes. The Internal Revenue Code and its regulations do not include

Limited evidence regarding the number of Middle Earth Graphics employees is sporadically scattered all over the current record. The Pension Plan definitely covers two employees, i.e., the Debtor and Janet Hall. (Trustee's Ex. 1, at ¶¶ 2.01–2.02.) The Debtor testified that when the Retirement Plan was established it covered four or five employees.[30] (Trans. at 202.) At least two former employees continue to maintain funds in the Retirement Plan, i.e., Rod Chalker and Doug Harris. (*See* Trustee's Ex. 2 & 10.) Based upon the relevant exhibits and testimony, this court finds, not including the employees represented by the NLRB, Middle Earth Graphics employed at *least* six employees and former employees on January 1, 1989, the date I.R.C. § 401(a) became effective.

Even considering all evidence in favor of the Debtor, the Pension Plan only benefits two out of six employees and former employees; therefore, a maximum of only thirty-three percent of Middle Earth Graphics' employees and former employees could have accrued meaningful benefits. I.R.C.

§ 401(a)(26) is not satisfied because less than forty percent of Middle Earth Graphics employees and former employees benefited under the Pension Plan.[31] As of January 1, 1989, the effective date of the minimum participation rule, the Pension Plan lost its tax qualified status. The Middle Earth Trustee has satisfied the third prong establishing the exception. 11 U.S.C. § 522(d)(10)(E)(iii).

The Middle Earth Trustee has proven all three requirements to establish the exception to exemptibility. The court holds the Debtor's interest in the Pension Plan is not exempt. Therefore, no discussion regarding whether the Pension Plan is reasonably necessary for the Debtor's support is required.

B. *The Individual Retirement Plan.*[32]

The Hall Trustee and the NLRB[33] have objected to the Debtor's claimed exemption of the individual retirement plan. The Hall Trustee argues the individual retirement plan may not be exempted be-

---

a similar provision regarding whether a sole shareholder and his spouse are considered "employees" or "employers". This court has not located any case law which has applied 29 C.F.R. § 2510.3–3(c) to any provision of I.R.C. § 401(a). It is not now necessary to decide this issue. For purposes of the analysis of I.R.C. § 401(a)(26), this court will *assume* the Debtor and Janet Hall are employees of Middle Earth Graphics.

30. During testimony, the Debtor and Janet Hall also disclosed the following employees: (1) John Hagenbarth, the comptroller of Middle Earth Graphics during 1986–1988 (Trans. at 26, 194.); (2) Sandi Breed, a secretary in 1986 (Trans. at 35.); and (3) Brenda Kloat, an employee in the accounting department in 1988. (Trans. at 194–95.) Further, mention was made of "the people in the Accounting Department", (Trans. at 177–78.), and "a secretary" in 1986. (Trans. at 35.) Additionally, the court takes judicial notice of a proof of claim filed by the NLRB in the Debtor's case on behalf of six former employees of Middle Earth Graphics, i.e., James Cannon, Jr., Lidell Ford, Jr., Wayne Ford, Clark Olson, Garry Root, and Karen Root. *See* FED.R.EVID. 201.

31. If the court were to apply 29 C.F.R. § 2510.3–3 to I.R.C. § 401(a)(26) and conclude the Debtor and Janet Hall were not employees for tax purposes, the Pension Plan would have zero employees. The court's final conclusion would be

the same because the Pension Plan would benefit zero percent of employees or former employees. If the court were to include the other employees mentioned by the Debtor and Janet Hall at trial and the six employees represented by the NLRB in the analysis, the result is the same. The Pension Plan would only benefit 13% (two out of fifteen) of employees or former employees.

32. The Internal Revenue Code defines an "individual retirement plan" as an "individual retirement account" under I.R.C. § 408(a) and an "individual retirement annuity" under I.R.C. § 408(b). *See* I.R.C. § 7701(a)(37).

The parties referred to the Debtor's individual retirement plan as an "individual retirement account" or "IRA". Because there is no definitive evidence regarding whether the Debtor actually had an individual retirement account or individual retirement annuity, this court will refer to the Debtor's "IRA" as an "individual retirement plan".

33. The NLRB has limited its participation regarding the exemption of the individual retirement account to whether any possible payments are "reasonably necessary for the support of debtor and any dependent of the debtor" under § 522(d)(10)(E). The Middle Earth Trustee has not taken an active position regarding the individual retirement plan.

cause it is not a payment under a "similar plan or contract" pursuant to § 522(d)(10)(E). The Debtor argues the individual retirement plan is exempt because he is sixty-seven years old and has a present right to payment.

There is a split of authority regarding whether an individual retirement account[34] is exempt under § 522(d)(10)(E). The major focus of the division turns upon whether an individual retirement account is a "similar plan or contract" as required by § 522(d)(10)(E). Some decisions hold individual retirement accounts are exempt because they are "similar plans" which provide benefits akin to future earnings. *See In re Hickenbottom,* 143 B.R. 931, 933 (Bankr.W.D.Wash.1992); *In re Chiz,* 142 B.R. 592, 593 (Bankr.D.Mass.1992); *American Honda Fin. Corp. v. Cilek (In re Cilek),* 115 B.R. 974, 987–88 (Bankr. W.D.Wis.1990). Other courts hold individual retirement accounts are not "similar plans," and thus not exempt, because the debtor retains significant control over the investment regardless of tax consequences for early withdrawal. *See In re Moss,* 143 B.R. 465, 466–67 (Bankr.W.D.Mich.1992); *In re Swenson,* 130 B.R. 99, 101 (Bankr. D.Utah 1991); *In re Iacono,* 120 B.R. 691, 694 (Bankr.E.D.N.Y.1990); *Matter of Spandorf,* 115 B.R. 415, 416–17 (Bankr. D.Conn.1990); *In re Pauquette,* 38 B.R. 170, 174 (Bankr.D.Vt.1984). A third line of cases ignore the "similar plan" language and hold an individual retirement account may be exempt if the debtor has a present right to payment, i.e., the debtor is older than fifty-nine and a half.[35] *See Matter of Chick,* 135 B.R. 201, 203 (Bankr.D.Conn. 1991); *In re Heisey,* 88 B.R. 47, 51 (Bankr. D.N.J.1988).

This court believes the answer to whether an individual retirement plan is exempt lies in the statutory language itself. Before going beyond the statute and analyzing "benefits akin to future earnings," "control over the investment" and "present right to payment," one must examine the express language of § 522(d)(10)(E) in its entirety to determine if individual retirement plans are "similar plans or contracts". *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989).

One fundamental axiom of statutory construction is the "whole statute" interpretation. *See* 2A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.05 (1992) [hereinafter SUTHERLAND]. This axiom stands for the proposition that a statute must be read in its entirety "so as to produce a harmonious whole." *Id.*

> An instrument must always be construed as a whole and the particular meaning to be attached to any word or phrase is usually to be ascribed from the context, the nature of the subject matter treated of, and the purpose or intention of the ... body which enacted or framed the statute or constitution.

*Id.* (Citations omitted.) Effect must be given to every word, phrase or sentence of a statute. *Id.* § 46.06. "There is a presumption that the same words used twice in the same act have the same meaning." *Id.* (citing *ICC Indus., Inc. v. United States,* 812 F.2d 694 (Fed.Cir.1987)).

This court believes a discrete subsection of a statute, when properly analyzed in isolation, must also be interpreted in its entirety. Every word or phrase of the subsection must be given effect. The same words or phrases used more than once should be assigned the same meaning.

To understand its meaning, it is necessary to restate § 522(d)(10)(E).

---

**34.** The decisions generally analyze individual retirement accounts. At least two courts have acknowledged there is a distinction between an individual retirement account and an individual retirement annuity. Nevertheless, these courts have determined, for § 522(d)(10)(E) purposes, the distinction is unimportant. *See In re Moss,* 143 B.R. 465, 466 (Bankr.W.D.Mich.1992); *American Honda Fin. Corp. v. Cilek (In re Ci-* *lek),* 115 B.R. 974, 976 n. 1 (Bankr.W.D.Wis. 1990).

**35.** This line of authority is built upon a court of appeals decision holding that a debtor's right to payment under a Keough plan was not exempt because there was no present right to payment. *Clark v. O'Neill (In re Clark),* 711 F.2d 21, 23 (3d Cir.1983).

(E) a payment under a stock bonus, pension, profitsharing, annuity, or *similar plan or contract* on account of illness, disability, death, *age*, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) *such plan or contract* does not qualify under *section* 401(a), 403(a), 403(b), *408*, or 409 of *the Internal Revenue Code*

. . . .

11 U.S.C. § 522(d)(10)(E) (emphasis added).

This court must determine whether Congress intended an individual retirement plan be included as a type of "plan or contract" under § 522(d)(10)(E). A close review reveals the phrase "plan or contract" is mentioned three times in § 522(d)(10)(E). For this court's analysis, the important usages of the phrase "plan or contract" are in the general provision, § 522(d)(10)(E), and the third prong of to the exception, § 522(d)(10)(E)(iii). The general provision exempts payments from a "similar *plan or contract* on account of ... age...." 11 U.S.C. § 522(d)(10)(E) (emphasis added). In the later exception, assuming the first two prongs are satisfied, the third prong denies exemption of "such *plan or contract* [if it] does not qualify under section ... 408 ... of the Internal Revenue Code...." *Id.* § 522(d)(10)(E)(iii) (emphasis added).[36]

This court believes those reported decisions which have held individual retirement accounts or individual retirement annuities are not "similar plans or contracts" have misinterpreted the plain language of the statute. Individual retirement plans are, without question, included in the class of plans or contracts described in § 522(d)(10)(E)(iii). If the individual retirement plan does not qualify under I.R.C. § 408 (and assuming the two other prongs of the exception are satisfied), the individual retirement plan is not exempt. Because individual retirement plans are specifically *included* under § 522(d)(10)(E)(iii), it is self-contradictory and illogical for the exact type of investment to be *excluded* from the general provision of § 522(d)(10)(E). Stated differently, if individual retirement plans are excluded from the "similar plan or contract" language of § 522(d)(10)(E), why would Congress include a non-qualified individual retirement plan as a possible exception to that same exemption?

If a court holds an individual retirement plan is not a "similar plan or contract" under § 522(d)(10)(E), it is impossible to reconcile the specific language in § 522(d)(10)(E)(iii) with the rest of the subsection. Because every word or phrase of § 522(d)(10)(E) must be given effect, this court cannot ignore Congress's inclusion of individual retirement plans in § 522(d)(10)(E)(iii). SUTHERLAND, *supra*, § 46.06. Similarly, because the same words or phrases used more than once must have the same meaning, the only rational conclusion is the "similar plan or contract" language in § 522(d)(10)(E) includes individual retirement plans.[37] *Id.*

**36.** The use of the term *"such* plan or contract" in § 522(d)(10)(E)(iii) instead of *"similar* plan or contract" has no effect on the analysis. The word "such" in the exception simply describes the *particular* plan or ·contract under review. Depending on the facts of a case, the first phrase of § 522(d)(10)(E)(iii) may be read as follows: "the stock bonus plan does not qualify ...;" "the pension plan does not qualify ...;" "the profitsharing plan does not qualify ...;" "the annuity contract does not qualify ...;" or, "the similar plan or contract does not qualify...." Under our facts, the phrase may be read as "the individual retirement plan does not qualify...."

**37.** The *Shumate* decision has a brief discussion regarding the possible exemption of individual retirement plans.

[P]ension plans that qualify for preferential tax treatment under 26 U.S.C. § 408 (individual retirement accounts) are specifically excepted from ERISA's anti-alienation requirement. See 29 U.S.C. § 1051(6). Although a debtor's interest in these plans could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under

Allowing the exemption of individual retirement plans also gives effect to both the Bankruptcy Code and the Internal Revenue Code. Section 408 of the Internal Revenue Code establishes individual retirement accounts and individual retirement annuities. *See* I.R.C. § 408(a)–(b). For tax purposes, individual retirement accounts and individual retirement annuities are subclasses of a broader group of investment vehicles entitled individual retirement *plans.* *Id.* § 7701(a)(37). An individual retirement annuity is an annuity or endowment *contract* which satisfies the requirements of I.R.C. § 408(b). In accordance with the Internal Revenue Code, it is evident that Congress intended for individual retirement accounts and individual retirement annuities to be considered *plans or contracts* for tax purposes. Because Congress specifically referred to the tax code section establishing individual retirement plans in § 522(d)(10)(E)(iii), it is evident to this court that individual retirement accounts and individual retirement annuities are also considered "plans or contracts" under the Bankruptcy Code.[38] *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1018, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815 (1984) (if two statutes are capable of coexistence, each must be interpreted to give effect to both

statutes); *Northcross v. Board of Educ. of Memphis City Schools,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973) (statutes containing similar language and sharing common effect should be interpreted *pari passu*). Therefore, this court holds individual retirement plans are exempt under § 522(d)(10)(E) to the extent reasonably necessary for support of the debtor.[39]

■ *In re Rector,* 134 B.R. 611, 617 (Bankr.W.D.Mich.1991), lists the relevant factors to determine the extent to which an exempt plan is "reasonably necessary for the support of the debtor and any dependent of the debtor." These factors are:

(1) Debtor's present and anticipated living expenses;

(2) Debtor's present and anticipated income from all sources;

(3) Age of the debtor and dependents;

(4) Health of the debtor and dependents;

(5) Debtor's ability to work and earn a living;

(6) Debtor's job skills, training and education;

(7) Debtor's other assets, including exempt assets;

(8) Liquidity of other assets;

"applicable nonbankruptcy law," that interest nevertheless could be exempted under § 522(d)(10)(E).
—— U.S. at ——, 112 S.Ct. at 2249 (footnotes omitted). This succinct statement seems to support the proposition that individual retirement accounts (plans) are exemptible under § 522(d)(10)(E).

**38.** This same analysis also applies to the other Internal Revenue Code sections stated in § 522(d)(10)(E)(iii). I.R.C. § 401 applies to pension *plans,* profitsharing *plans* and stock bonus *plans.* I.R.C. § 403 applies to annuity *contracts.* I.R.C. § 409 applies to employee stock ownership *plans.* Additionally, each of the tax sections stated in § 522(d)(10)(E)(iii) are a component of the subpart of the Internal Revenue Code entitled "Pension, Profit–Sharing, Stock Bonus *Plans,* Etc." *See Chiz,* 142 B.R. at 592.

**39.** Given this opinion's limited focus and conclusion regarding the statute itself, factors such as "present right to receive," "control" and "benefits akin to future earnings" as addressed in other reported decisions are superfluous. Under the statute, this judge believes "control" is

not important and the debtor's "right to payment" is not limited to "present" right as opposed to some conditional or future right. To the extent such factors may be relevant, this judge is unable to improve the complete and persuasive analysis of Judge Utschig in *American Honda Fin. Corp. v. Cilek (In re Cilek ),* 115 B.R. 974 (Bankr.W.D.Wis.1990).

Any concerns about whether a debtor is abusing the bankruptcy system by claiming a questionable IRA exemption may be easily addressed within the confines of the statute rather than by judicially created statutory gloss begetting such "tests" as "present right to payment" or "control". As examples, (1) the amount of an IRA exemption may be limited or nullified by the "reasonably necessary for support" element, or (2) a claimed exemption may be reduced or eliminated by the amount of an avoidable preferential transfer or fraudulent conveyance into the IRA or other plan. *Velis v. Kardanis,* 949 F.2d 78, 82 (3d Cir.1991) ("We believe it reasonable to conclude that Congress intended to provide protection against the claims of creditors for a person's interest in pension plans, unless vulnerable to challenge as fraudulent conveyances or voidable preferences.")

(9) Debtor's ability to save for retirement;

(10) Special needs of the debtor and dependents;

(11) Debtor's financial obligations, e.g., alimony or support payments.

*Id.*

 In this contested matter, the Debtor is sixty-seven years old and is currently employed as an independent sales representative in the printing industry. (Trans. at 139, 181.) The Debtor receives a draw on sales commissions of $850 per month. However, as of the trial date, the Debtor had *not* received any commissions from the sales job. (Trans. at 186.) The Debtor may also be entitled to $521 per month as a non-competition payment from the purchaser of Middle Earth Graphics' assets. This possible right to payment is contested and such payments are currently being deposited with the Middle Earth Trustee. (Trans. at 183–85.)

The Debtor is anticipating major medical expenses including inserting artificial knees, removing cataracts, and root canal. The Debtor's medical insurance will not cover all these costs. (Trans. at 188.) The cost of his necessary prescription drugs is also more expensive than originally anticipated. (Trans. at 188.) Additionally, the Debtor is in the middle of a divorce proceeding and may be required to pay alimony as a result of a state court judgment. (Trans. at 189.)

This court also acknowledges the Debtor's limited ability to save for retirement. This court notes it has held the Debtor's major retirement investment, the Pension Plan, to be nonexempt. Consequently, the Debtor will not be able to utilize Pension Plan funds for his retirement. Because the Debtor is currently of retirement age, he has very limited ability to actually save for retirement. Retirement is a present reality and, unfortunately for the Debtor, the majority of his assets have been, or will be, utilized to pay creditors. Therefore, considering the Debtor's age, health, ability to earn income, actual current income, actual expenses, and limited ability to save for retirement, this court finds the individual

retirement plan payment of approximately $14,000 is reasonably necessary for the future support of the Debtor.

## VI. CONCLUSION

For the reasons stated above, this court holds that: (1) the Pension Plan is property of the estate pursuant to § 541(c)(2); (2) the Pension Plan may not be exempted from property of the estate pursuant to § 522(d)(10)(E)(i)–(iii); and (3) the individual retirement plan is exempt. An order shall be entered accordingly.